THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:21CR145 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JOSHUA WOOLRIDGE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on a Motion to Suppress filed by Defendant Joshua Woolridge. Doc. 12. The Government timely opposed the motion. Doc. 16. On August 12, 2021, the Court conducted an evidentiary hearing on the motion. Upon review of the relevant filings and applicable law, the Court GRANTS IN PART AND DENIES IN PART the pending motion.

On December 18, 2020 at roughly 11:30 p.m., Officer Brandon Collins responded to a call for backup in the area of Wildwood Avenue and Orrin Street in Akron, Ohio. Another officer had attempted a traffic stop and one of the vehicle's occupants had fled on foot. Officer Collins observed an individual dressed all in camouflage emerge from near a home and believed it could possibly be the fleeing individual. Officer Collins shined the light from his cruiser on the individual and approached him. Upon approaching him, the individual placed his hands in the air. While Officer Collins attempted to gather some basic information from the individual, the individual fled from the scene. Officer Collins pursued and witnessed the fleeing person discard several items while he ran.

Other officers were able to apprehend the fleeing individual who was subsequently identified as Defendant Joshua Woolridge. After being arrested, Woolridge informed officers that "I'm going to jail" and "I got a warrant." When Woolridge attempted to offer additional information, Officer Collins responded, "Not now, man." When Officer Collins again returned to the cruiser, Woolridge again volunteered, "I got a parole violation, sir." Officer Collins advised that Woolridge was making things worse for himself with his flight and attempted to walk away from the cruiser. Roughly one minute later, Officer Collins returned to gather Woolridge's biographical information. Following receipt of that information, Woolridge again indicated a desire to speak with Officer Collins. At that time, Officer Collins asked if there was anything illegal in the items that were discarded while Woolridge ran away from the officer. At that time, Woolridge admitted that he had thrown a firearm during the pursuit.

Woolridge now seeks to suppress the evidence against him. Woolridge contends that his initial encounter with Officer Collins was unlawful and that his statements were taken in violation of his Constitutional rights. The Court now reviews those contentions.

I. Initial Encounter

Typically, three levels of encounters between police and citizens are challenged in the courts: (1) the consensual encounter, which may be initiated without any objective level of suspicion, *United States v. Mendenhall*, 446 U.S. 544 (1980); *United States v. Travis*, 62 F.3d 170 (6th Cir. 1995) (hereinafter "*Travis II* "), *cert. denied*, 516 U.S. 1060, (1996); (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity, *Florida v. Royer*, 460 U.S. 491 (1983); *United States v. Respress*, 9 F.3d 483 (6th Cir.1993); and (3) the arrest, valid only

2

if supported by probable cause, *Illinois v. Gates*, 462 U.S. 213 (1983). In *Royer,* the Supreme Court elaborated on what constitutes a consensual encounter:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed.

*Royer,* 460 U.S. at 497.

A seizure of an individual, on the other hand, occurs when "under the totality of the circumstances, a reasonable person would have believed that he or she was not free to walk away." *United States v. Alston,* 375 F.3d 408, 411 (6th Cir. 2004). The officer's subjective intent in detaining an individual is irrelevant so long as that intent is not conveyed to the individual in a way that results in the individual believing that he or she is not free to leave. *See United States v. Mendenhall*, 446 U.S. 544, 554 n. 6 (1980). "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id*. at 554.

Officer Collins' testimony compels a conclusion that his encounter with Woolridge was consensual and did not rise to the level of a seizure. Officer Collins was

3

the only officer present when he approached Woolridge. Officer Collins did not display his weapon or even approach Woolridge with his hand on his weapon or taser. Finally, Officer Collins described his initial interaction with Woolridge as follows:

> So I go up to the individual, hey, what's going on man? He's like I am just trying to go home. I am just trying to go home. I am like look, something along the lines of, I just need to get your information. If you're not the guy we're looking for you're out of here.

When asked whether he told Woolridge to stop, Collins noted:

> I believe I said something along the lines, hey, man, I need to talk to you for a second or something along those lines. It was more of a -- if wasn't like, hey, stop. It was like -- I don't remember exact context, but it was something, hey, can I talk to you for a second. We're looking for somebody that I need to talk to you and that type of thing.

Accordingly, Officer Collins' tone and language choice also support the conclusion that the encounter was consensual. As such, there is no basis to find a Fourth Amendment violation related to this encounter.

  II. Statements

The Sixth Circuit has previously provided guidance on the issue Woolridge raises relative to his statements to Officer Collins:

> The line between impermissible interrogation and permissible follow-up questions to volunteered statements is a fine one. Police may listen to volunteered statements, and need not interrupt a suspect who is volunteering information in order to deliver a *Miranda* warning. Police may even interrupt a volunteered statement to ask clarifying or follow-up questions. That said, when asking a suspect about volunteered information, police may at times cross the line from asking clarifying or follow-up questions into the express questioning or its functional equivalent barred by *Miranda*. The Supreme Court, while not explicitly clarifying the distinction between permissible follow-up questions and impermissible interrogation, has stated in a different context that, even at meetings with the police initiated by a suspect, if, as frequently would occur[,] the conversation is not wholly one-sided, it is likely that the officers will say or do something that clearly would be interrogation. Again, as the Supreme Court has made clear repeatedly, without obtaining

4

> a waiver of the suspect's Miranda rights, the police may not ask questions that are designed to elicit incriminatory admissions. The difference between permissible follow-up questions and impermissible interrogation clearly turns on whether the police are seeking clarification of something that the suspect has just said, or whether instead the police are seeking to expand the interview.

*Tolliver v. Sheets*, 594 F.3d 900, 920–21 (6th Cir. 2010)(citations, quotations, and alterations omitted).

In this case, while Woolridge unquestionably sought out Officer Collins to volunteer information, Officer Collins' questions did not seek clarification of Woolridge's statements. Rather, Officer Collins' sought to expand the interview and did so without administering *Miranda* warnings. Accordingly, Woolridge's initial statements to Officer Collins must be suppressed.

However, it does not follow that Woolridge's later, post-*Miranda* statements, should also be suppressed. In this regard, the Sixth Circuit has noted:

> The four-justice plurality and Justice Kennedy, however, applied different tests to determine whether a post-Miranda confession should be suppressed because of improper pre-Miranda questioning. The plurality explained that "[t]he threshold issue when interrogators question first and warn later is ... whether it would be reasonable to find that in these circumstances the warnings could function 'effectively' as *Miranda* requires." *Id*. at 611–12. In making this determination, the plurality set forth "a series of relevant facts that bear on whether Miranda warnings delivered midstream could be effective enough to accomplish their object:" (1) the completeness and detail involved in the first interrogation; (2) the overlapping content of the pre-and post-*Miranda* statements; (3) the timing and setting of the interrogations; (4) the continuity of police personnel during the two interrogations; and (5) the degree to which the interrogator's questions treated the second round as continuous with the first. *Id*. at 615.
>
> In a concurring opinion, Justice Kennedy rejected the plurality's objective approach for one that turns on whether "the two-step interrogation technique was used in a calculated way to undermine the Miranda warning."

5

*United States v. Ashmore*, 609 F. App'x 306, 316 (6th Cir. 2015).

Under the unique facts of this case, Officer Collins crossed the fine line between permissible follow-up questions and expanding an interview without *Miranda* warnings. Given Woolridge's repeated attempts to volunteer information, there is no basis to conclude that Officer Collins intended to undermine *Miranda* through his questions. Moreover, there is no indication that officers treated the second round of questioning as continuous with the first. Instead, post-warning, officers began their questioning anew. This Court, therefore, concludes that Woolridge's post-*Miranda* statements are not tainted by his pre-warning statements. Woolridge's post-*Miranda* statements remain admissible.

Based upon the above, Woolridge's motion to suppress is GRANTED IN PART AND DENIED IN PART as detailed above.

IT IS SO ORDERED.


October 14, 2021                    /s/ Judge John R. Adams
                                    JUDGE JOHN R. ADAMS
                                    UNITED STATES DISTRICT COURT